UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK and ELLEN MILLS,

    Plaintiffs,                                     CIVIL ACTION NO 09-14026

    v.                                                DISTRICT JUDGE JOHN FEIKENS

LAPEER COUNTY and                          MAGISTRATE JUDGE MARK RANDON
DANA MILLER,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFFS
MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 11) AND
TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT (DKT. 16) AND ORDER
DENYING PLAINTIFF'S MOTION TO AMEND (DKT. 19) AS MOOT**

    Plaintiffs Mark and Ellen Mills ("Plaintiffs") filed this action, in which they allege that Defendants Lapeer County and Dana Miller ("Defendants") violated MCL § 600.2918 (Michigan's anti-lockout statute), MCL § 600.2919a (Michigan's conversion statute), MCL § 600.5701 (Michigan's landlord tenant statute) and the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, when Defendants removed Plaintiffs' personal property from a commercial parcel of real estate following a tax foreclosure.

    Before the Court are Plaintiffs' motion for partial summary judgment (Dkt. 11), Defendants' motions for partial summary judgment (Dkt. 16) and Plaintiffs' motion to amend (Dkt. 19). All pretrial matters were referred to the undersigned pursuant to 28 U.S.C. § 636 (Dkt. 3). For the reasons set forth below, it is **RECOMMENDED** that Plaintiffs' motion for partial summary

judgment be **DENIED** and that Defendants' motion for partial summary judgment be **GRANTED IN PART AND DENIED IN PART**. Further, **IT IS ORDERED** that Plaintiffs' motion to amend is **DENIED AS MOOT**.[1]

## I. FACTUAL BACKGROUND

The facts in this case are largely undisputed. Plaintiffs were the land contract vendees of a property located on Clifford Road in Lapeer County, Michigan (the "Property"). Neither the land contract vendor nor Plaintiffs paid the property taxes for the Property and Defendant Lapeer County – following proper tax foreclosure procedures – obtained title to the Property for failure to pay taxes on February 23, 2009. On or about May 4-7, 2009 Defendant Dana M. Miller ("Ms. Miller"), Treasurer of Lapeer County, had conversations with Plaintiff Ellen Mills regarding how much time Plaintiffs would have to vacate the Property. However, no resolution was reached.

Thereafter, on or about May 8 or May 9, 2009, Ms. Miller on behalf of Lapeer County, caused a Notice to Quit the Property to be served on Plaintiffs (Dkt. 11; Ex. 1), which indicated that, if the Property were not vacated within thirty (30) days, an eviction action would be instituted. On or about June 9-11, 2009, Defendants, without further notice, or judicial order, removed Plaintiffs' possessions from the Property. Plaintiffs allege that the process of removal continued over several days with County employees, "trustys" from the Lapeer County Jail, private contractors, friends and relatives of County employees and their agents entering and leaving the Property at will, removing and destroying Plaintiffs' personal property and taking some of it to the County complex.

Plaintiffs' and Defendants' version of events diverge on the issue of abandonment. Ms. Miller, in a lengthy narrative attached to Defendants' motion papers (Dkt. 16, Ex. 5), indicates that

---
[1] Plaintiffs' motion to amend is denied as moot since Plaintiffs' recently filed a second motion to amend, which will be the subject of a future hearing and order.

she thought Plaintiffs had abandoned the Property, making a judicial eviction order unnecessary. Ms. Miller's belief appears predicated on the fact that, on June 6, 2009, she observed "vehicles, at least one with a trailer attached, and people who were moving items out of the [P]roperty and loading that property into vehicles and trailers." *Id.* at 4. Plaintiffs dispute that they abandoned the Property prior to Defendants' entry onto the Property and removal of Plaintiffs' belongings.

## II. ANALYSIS

### A. Standards of Review

Pursuant to Fed. R. Civ. Pro. 15(a)(2), a party may amend its pleading by leave of the court and the court "should freely give leave when justice so requires." However, the grant of leave to amend is not a foregone conclusion. Appropriate factors to consider in determining whether to permit an amendment include: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791

F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Plaintiffs' Motion To Amend

Plaintiffs filed a motion to amend (Dkt. 19), seeking to add a claim for unreasonable seizure under the Fourth Amendment of the United States Constitution. The Supreme Court has recognized that the participation of state actors in an improper eviction constitutes a seizure in violation of the Fourth Amendment. The controlling case in this regard is *Soldal v. Cook County, Illinois*, 506 U.S. 56 (1992), where the Supreme Court addressed whether mobile home owners had their mobile home seized within the meaning of the Fourth Amendment when deputy sheriffs assisted the owner and manager of the trailer park in physically tearing the mobile home from its foundation and towing it

to another lot. In rejecting the Seventh Circuit's interpretation of the Fourth Amendment, the Supreme Court held that "the Amendment protects property as well as privacy." *Id.*

The Court does not find any bad faith, lack of notice or undue prejudice to Defendants. However, on August 31, 2010, Plaintiffs' filed a second motion to amend (Dkt. 34), to which Defendants have not yet responded. Therefore, the Court will DENY Plaintiffs' first motion to amend, and schedule a hearing on Plaintiffs' second motion to amend at a later date.

For purposes of this Report and Recommendation, the Court will consider the cross motions for summary judgment in relation to Plaintiffs' claims as presented in the first Proposed Amended Complaint (Dkt. 19, Ex. 1), as the legal issues concerning these claims have been fully briefed by the parties. Specifically, Plaintiffs' Proposed Amended Complaint alleged the following claims against Defendants Miller and Lapeer County: (Count I) § 1983 claim under the Fourth Amendment, unlawful seizure; (Count II) § 1983 claim under the Fifth and Fourteenth Amendments, deprivation of property without due process of law; (Count III) § 1983 claim under the First Amendment, retaliation claim; (Count IV) unlawful eviction under state law; (Count V) common law and statutory conversion; (Count VI) breach of contract; (Count VII) fraud and misrepresentation; and (Count VIII) § 1983 conspiracy claim.

### C. Cross Motions For Summary Judgment

The parties each filed motions for partial summary judgment. Plaintiffs' motion for partial summary judgment (Dkt. 11) requests a judgment of liability on their claims for illegal eviction, conversion, breach of contract and deprivation of property without due process of law. Essentially, Plaintiff's argue that they are entitled to a ruling as a matter of law on liability on these claims and that the only issue for trial should be damages.

Defendants' motion for partial summary judgment seeks dismissal of the bulk of Plaintiffs' claims,[2] based upon the following arguments: (1) Plaintiffs have not stated a valid claim for wrongful eviction, as Plaintiffs are not "tenants" for purposes of Michigan's wrongful eviction statute; (2) Defendants provided all the requisite due process to Plaintiffs through the tax foreclosure proceedings, and no further eviction process was required; (3) Defendants are entitled to qualified immunity; (4) Plaintiffs' statutory conversion claim fails as a matter of law; (5) Defendants are absolutely immune from Plaintiffs' intentional tort claims under Michigan's Governmental Tort Immunity Act; and (6) Plaintiffs have not stated a valid claim for breach of contract/promissory estoppel.

For the reasons set forth below, it is recommended that Plaintiffs' motion for partial summary judgment be denied, and that Defendants' motion for partial summary judgment be granted in part and denied in part. Specifically, it is recommended that: (i) Plaintiffs' motion for partial summary judgment be denied entirely, as there are questions of fact concerning whether Plaintiffs' abandoned the Property; (ii) Defendants' motion for partial summary judgment be granted as to Plaintiffs' claims for conversion and breach of contract, as to Defendants Miller and Lapeer County; and (iii) Defendants' motion for partial summary judgment be denied on all other grounds.

### i) Plaintiffs' Wrongful Eviction Claim

The Court will first consider Plaintiffs' unlawful eviction claim, under state law. In Count IV of the Amended Complaint, Plaintiffs allege that – under Michigan's anti-lockout statute, MCL § 600.2918 – the fact that the Property was forfeited to the County for unpaid taxes did not give

---

[2] Specifically, Defendants' motion for partial summary judgment requests dismissal of Plaintiffs' § 1983 claims and Plaintiffs' breach of contract, wrongful eviction and conversion claims. Defendants' motion for partial summary judgment does not address Plaintiffs' fraud and misrepresentation claim.

Defendants the right to use self-help to then evict them from the Property. Plaintiffs' claim is brought under MCL § 600.2918(1), which reads:

> Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

However, for MCL § 600.2918(1) to apply, the self-help must be **forcible** to give rise to treble damages. In an early case construing nearly identical language, *Shaw v. Hoffman*, 25 Mich. 162, 169 (1872), the Michigan Supreme Court explained:

> [T]he entry or detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out; in other words, the force contemplated by the statute is not merely the force used against, or upon the property, but force used or threatened against **persons** as a means, or for the purpose of expelling or keeping out the prior possessor (emphasis added).

In this case, there is no allegation that Defendants used force or threat of force to physically remove Plaintiffs from the Property or to bar Plaintiffs' reentry to the Property. Indeed, Plaintiffs allege in ¶ 19 of their latest proposed Amended Complaint that Defendants "on June 9, 2009, **at a time when Plaintiff's were not at the Clifford Road property**, descended upon the building and forcibly removed Plaintiffs' property..." (Dkt. 19, Ex. 2) (emphasis added). Thus, Plaintiffs do not allege any physical interaction between Plaintiffs and Defendants during the course of the eviction, thus Plaintiffs do not have a valid cause of action under subsection 1.

However, Plaintiffs' may have a claim under subsection 2, if re-pled accordingly – MCL 600.2918(2) applies generally to wrongful eviction claims in Michigan, and provides in relevant part

as follows:

> (2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200, whichever is greater, for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:
>
> * * *
>
> (b) The removal, retention, or destruction of personal property of the possessor.

The statute contains an exception in subsection (3), which provides that subsection (2) shall not apply where the owner can establish that he or she:

> (a) acted pursuant to court order; or
>
> (b) interfered temporarily with possession only as necessary to make needed repairs or inspection and only as provided by law; or
>
> (c) believed in good faith the tenant had abandoned the premises, and after diligent inquiry had reason to believe the tenant does not intend to return, and current rent is not paid.

The only other recognized exception is for hotel guests, whereby a hotel guest is not entitled to notice of termination and can be the subject of self-help eviction, including a lockout, by the proprietor, while a tenant has protection against such measures. *See Ann Arbor Tenants Union v. Ann Arbor YMCA*, 229 Mich. App. 431 (1998).

Defendants argue in their motion for partial summary judgment that Plaintiffs were never Defendants' "tenants" for purposes of the anti-lockout statute, because there was never any landlord tenant relationship between Plaintiffs and Defendants. Defendants further argue that the tax foreclosure statute – MCL § 211.78 – extinguished all of Plaintiffs' rights to the Property, including

any right to possession. Plaintiffs respond that they are "tenants at sufferance," and thus protected by Michigan's anti-lockout statute.

What is clear is that, regardless of how Plaintiffs' possessory interest is classified, Defendants had to secure a court order before evicting Plaintiffs from the Property. *DeBruyn Produce Co. v. Romero*, 202 Mich. App. 92, 103, 508 N.W.2d 150 (1993)(Property owner is "prevented from exercising 'self-help'" in order to regain possession and it must resort to judicial process.). In Michigan, when a trespasser is in possession of premises, the person rightfully entitled to the premises may go immediately to court to begin "summary proceedings" to recover possession of the premises. *See* MCL § 600.5714(1)(e). The same is not true when a tenancy is involved. For example, in order to begin summary proceedings against a holdover tenant (*i.e.*, a tenant at sufferance) the person rightfully entitled to the premises must first satisfy certain notice to quit procedures. *See* MCL § 600.5714(1)(c)(iii); MCL § 554.134.

Thus, to summarize, one may go immediately to court to recover possession of premises from a trespasser, but one must wait to go to court to recover possession of premises from a tenant at sufferance until one complies with Michigan's notice to quit procedures. Therefore, the only logical explanation for Ms. Miller's decision to employ a notice to quit – Plaintiffs argue – is that Defendants recognized that Plaintiffs were not trespassers, for if they were, Ms. Miller could have saved valuable time and gone immediately to court to institute summary proceedings to eject Plaintiffs from the Property. In any event, the undersigned finds as a matter of law that Plaintiffs were tenants at sufferance following the tax foreclosure, thus Plaintiffs were protected by Michigan's anti-lockout statute.

Michigan's anti-lockout statute, MCL § 600.2918, draws no distinction among tenants at will, by the years, or by sufferance. Therefore, this Court finds that the term "tenant," as it is used in MCL § 600.2918(2), is intended to include all three types of tenancies. The statutory scheme in Michigan permits eviction from abandoned property without a court order, however, there are protections afforded to a tenant at sufferance, who is found not to have abandoned. The anti-lockout statute is one such protection.

The case of *Barron v. Federal Home Loan Mortg. Corp.*, 2007 WL 4180807 (E.D.Mich., Nov. 26, 2007) (Steeh, J.) is instructive. *Barron* involved the plaintiff's default on her residential mortgage. As a result of this default, the plaintiff's mortgage was foreclosed and sold at sheriff's sale on November 9, 2006. On December 27, 2006, the plaintiff was evicted and all of her personal property was removed from the home. The defendants did not obtain any court order permitting the plaintiff's eviction. The plaintiff filed a complaint, alleging, among other things, that she was wrongfully evicted under MCL § 600.2918 by the defendants. The defendants moved for summary judgement, arguing initially that the plaintiff abandoned the property before the defendants entered the house and removed the plaintiff's personal property. Judge Steeh denied the defendants' summary judgment motion, finding that there was an issue of fact concerning abandonment.

On reconsideration, the defendants in *Barron* then argued – as Defendants in the present case – that the plaintiff's anti-lockout claim failed as a matter of law because there was not a landlord tenant relationship between the defendants (a foreclosing bank and a real estate agent) and the plaintiff. Judge Steeh rejected the defendants' argument, and held that the plaintiff – a mortgagor terminated by foreclosure – was a "tenant" at sufferance for purposes of the anti-lockout statute. *See Barron v. Federal Home Loan Mortg. Corp.*, 2008 WL 275675 (E.D.Mich., Jan. 31, 2008).

In reaching this conclusion, Judge Steeh persuasively cited to *Allen v. Carpenter*, 15 Mich. 25 (1866), which directly addressed the question of whether a mortgagor terminated by foreclosure is a "tenant." Judge Steeh found that the Michigan Supreme Court determined that a mortgagor whose estate has been terminated by foreclosure proceedings is a tenant at sufferance, "defined to be one who, having come into possession by right, holds over without right." *Id.* Under Michigan law, "when a tenant comes rightfully into possession of land and continues to occupy it after the expiration of the period allowed by the owner, the tenant becomes a tenant at sufferance." John G. Cameron, Jr., *Michigan Real Property Law; Principles and Commentary*, at p. 869. A "tenancy by sufferance" is similar to a tenancy at will in that its term is also indefinite and either party may terminate the tenancy at its discretion. A tenancy by sufferance is distinguished from a tenancy at will by the fact that there is no landlord/tenant relationship between the parties. The occupant of the premises simply holds possession at the "sufferance" of the owner. The common characteristic of all tenancies by sufferance is that the occupant at some prior point in time had the right to possess the premises. *See Cecil v. Viacom Outdoor Group, Inc.*, 2005 WL 2177096 (E.D.Mich. Sept. 08, 2005) (Cohn, J.).

The reasoning of *Barron* is analogous to Plaintiffs in the present case, who are land contract vendees holding over after a tax foreclosure. Thus, the undersigned finds that Plaintiffs are properly considered to be tenants at sufferance for purposes of Michigan's anti-lockout statute; Plaintiffs can, therefore, proceed on their claims for wrongful eviction under MCL § 600.2918.

The Sixth Circuit case *Cox v. Drake*, 241 Fed. Appx. 237 (6th Cir. 2007) is also instructive. In *Cox*, the plaintiff brought suit against a police officer, alleging that police officer, acting under color of law, used his position to cause landlord to declare a violation of lease in order to effect the

plaintiff's eviction. While the Sixth Circuit ultimately dismissed the plaintiff's claims,[3] the panel also specifically recognized that – had the defendants forcibly removed or barred the plaintiff from entering the premises without following forcible detainer (*i.e.*, eviction) procedures – the plaintiff would have an actionable claim because she was deprived of her leasehold interest. The Sixth Circuit also recognized that – had the defendants entered the premises and actively participated in a constructive eviction, such as ordering and escorting the plaintiff out of the premises, without following the statutory eviction procedures – this too would amount to an actionable claim.

In the present case, there was admittedly no judgment from the state district court allowing Defendants to remove Plaintiffs' personal property from the Property. This means that Defendants are protected from the consequences of unlawfully removing Plaintiffs personalty only if they had a good faith belief that the Property was abandoned – that is, there was reason to believe the Plaintiffs did not intend to return. There is an issue of fact, however, whether Defendants made a "diligent inquiry" in this case, and whether Defendants had reason to believe Plaintiffs did not intend to return to the Property. Since these issues of fact remain, Plaintiffs' motion for partial summary judgment should be denied in its entirety. If a jury believes that Plaintiffs abandoned the Property, then Defendants should not be liable under any of Plaintiffs' theories of liability.

### ii) Qualified Immunity

Defendants next argue that they are entitled to qualified immunity as to Plaintiffs' § 1983 claims. The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts. *See Anderson v. Creighton*, 483 U.S. 635, 638-640 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir.

---

[3] The plaintiff's claims in *Cox* were dismissed because the plaintiff voluntarily vacated her home after receiving a Notice to Quit, but prior to the scheduled eviction hearing.

1991). As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability.'" *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)). Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992). However, government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *Anderson*, 483 U.S. at 638-39; *Harlow*, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

Plaintiffs bear the burden of defeating this immunity, which is a legal issue to be decided by the Court. *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). First, Plaintiffs must show that Defendants deprived them of a right protected by the Constitution. Second, this right must be so clearly established that a reasonable officer would understand that his or her actions would violate that right. *Harlow*, 457 U.S. at 818-19; *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000). As stated by the Supreme Court in *Anderson*:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citation omitted); *see also Daugherty*, 935 F.2d at 784.

In the present case, Plaintiffs claim that Defendants violated two of Plaintiffs' explicit constitutional rights – their Fourth Amendment right to be free from unreasonable seizures and their Fourteenth Amendment right to be afforded due process of law.[4] Thus, the undersigned must decide whether, in light of clearly established law applicable on the date of the eviction, a reasonable officer would have believed that Defendants' conduct deprived Plaintiffs of their Fourth, Fifth and Fourteenth Amendment rights.

"When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified...." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987))(quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although it need not be the case that "the very action in question has previously been held unlawful ... in the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights. *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no protection to "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

---

[4] Plaintiffs also allege a First Amendment retaliation claim and a § 1983 conspiracy, but neither party extensively discussed these claims in their summary judgment briefs and the undersigned will not analyze these claims in this Report and Recommendation. Defendants can move for summary judgment on these claims at a later date, if they so choose.

The undersigned does not believe that Defendants are entitled to qualified immunity with respect to Plaintiffs' due process claim. As the Sixth Circuit stated in *Flatford v. City of Monroe*, 17 F.3d 162, (6th Cir. 1994), "it was sufficiently clear at the time of the eviction that [Plaintiffs] were entitled to pre-eviction judicial oversight in the absence of emergency circumstances." *Flatford*, 17 F.3d at 170. Furthermore, Michigan laws forbidding self-help evictions without judicial process and providing for pre-eviction notice were well-established. As trained public officials, Defendants should have known that self-help evictions are strictly prohibited in the state of Michigan, and that the eviction they facilitated was therefore "patently unlawful." *See e.g., Thomas v. Cohen*, 304 F.3d 563 (6th Cir. 2002); *see also, Cox v. Drake*, 241 Fed. Appx. 237 (6th Cir. 2007).

Defendants claim that they were not attempting to deprive Plaintiffs of their property rights and indeed did not believe that Plaintiffs had any such rights, as Defendants aver that it was unclear at the time whether Plaintiffs were "tenants" and as Defendants aver that they reasonably believed that the tax foreclosure proceedings terminated all of Plaintiffs' rights in the Property. Under these circumstances, the undersigned finds that this case presents more than mere mistaken judgment, but rather an unwarranted failure to make the determinations necessary prior to taking hasty action. Thus, the undersigned is unable to rationalize Defendants' failure to ensure any form of judicial eviction process prior to evicting Plaintiffs.

It is also compelling that Defendants served Plaintiffs with a notice to quit which, on its face, stated that Plaintiffs "must move by June 9, 2009 **or your landlord/landlady may take you to court to evict you**" (Dkt. 13; Ex. 7)(emphasis added). The notice to quit explicitly contemplated future eviction proceeding. But, Defendants in this case only went half-way – they served the notice

to quit (as they were required to do), but Defendants then failed to follow through on eviction proceedings in the state district court.

For the same reasons, the undersigned also believes that Defendants are not entitled to qualified immunity on Plaintiffs' Fourth Amendment claim. As the Sixth Circuit also indicated in *Flatford*, "the Fourth Amendment standard of reasonableness requires no more of government officials than that of due process of law." *Flatford*, 17 F.3d at 170 (citations and internal quotation marks omitted). Furthermore, *Soldal* was a unanimous Supreme Court decision decided well before the incidents giving rise to Plaintiffs' complaint occurred. In addition, *Soldal* merely refined well-settled rules of law. Thus, it was clear in this Circuit at the time of the eviction that Plaintiffs had a right not to have their possessory interests in the Property encumbered by the type of unreasonable seizure that occurred in this case. Objectively reasonable officers in the same circumstances would have known that they were violating Plaintiffs' Fourth Amendment rights. The undersigned therefore concludes that Defendants are not entitled to qualified immunity with respect to Plaintiffs' unreasonable seizure claim.

### *iii) State Immunity*

Defendants next argue that MCL § 691.1407(5) provides them absolute immunity from Plaintiffs' intentional tort claims. Michigan's Governmental Tort Liability Act states, in pertinent part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function....

***
> (5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

MCL § 691.1407(1), (5).

It is undisputed that: (1) the acts in question occurred during the scope of Ms. Miller's employment as the treasurer of Lapeer County; and (2) she was acting, or reasonably believed to be acting, under the scope of her authority. Indeed, Plaintiffs conceded in their response to Defendants' motion for summary judgment and again during oral argument that Defendants are entitled to immunity from Plaintiffs' intentional tort claims. Thus, Defendants Miller and Lapeer County are entitled to immunity as to Plaintiffs' conversion claim, and this claim should be dismissed. Plaintiffs, however, reserved the right to assert a future conversion claim against those individuals that actually removed Plaintiffs' personalty from the Property. Indeed, Plaintiffs' second Proposed Amended Complaint asserts such claims, however, these claims are not presently before the Court, and the undersigned does not issue any opinion as to the viability of such claims at this time.

### iv) Breach of Contract

Defendants also request dismissal of Plaintiffs' breach of contract claim, which is Count VI of the Amended Complaint. This claim essentially argues that the notice to quit served by Defendants created a unilateral contract between Plaintiffs and Defendants, which Plaintiffs claim Defendants then breached by not following through with a state eviction proceeding. Defendants argue that service of the notice to quit did not create any contractual relationship between the parties.

Plaintiffs did not respond to this argument in their response to Defendants' motion, nor did Plaintiffs argue in support of this claim during oral argument. In any event, the undersigned finds that Defendants' arguments concerning Plaintiffs' breach of contract claim are well-taken. The undersigned is not aware of any caselaw – nor have the Plaintiffs pointed to any – indicating that the service of a notice to quit alone creates some type of contractual relationship or "lease" between the parties. Thus, Defendants' motion for summary judgment on Plaintiffs' breach of contract claim should be granted, and this claim should be dismissed.

### III. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Plaintiffs' motion for partial summary judgment be **DENIED**, and that Defendants' motion for partial summary judgment be **GRANTED IN PART AND DENIED IN PART.**

Furthermore, **IT IS ORDERED** that Plaintiffs' motion to amend is **DENIED** as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: September 13, 2010

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, September 13, 2010, by electronic and/or first class U.S. mail.*

<em>s/Melody R. Miles</em><br>
<em>Case Manager to Magistrate Judge Mark A. Randon</em><br>
<em>(313) 234-5542</em>